UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:19-cv-00013-KDB
(5:17-cr-00041-KDB-DCK-1)

| | |
|---|---|
| SHEA DAVID BYRD, )<br>)<br>Petitioner, )<br>)<br>vs. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. )<br>_____ ) | ORDER |

**THIS MATTER** is before the Court on Petitioner's Amended Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [CV Doc. 3][1] and Petitioner's "Leave to File a Supplement to §2255" [CV Doc. 3-1].

I.  **BACKGROUND**

In early March 2017, investigators in Caldwell County, North Carolina, seized 126 grams of methamphetamine from a cooperating defendant ("CD"). [CR Doc. 23 at ¶ 6: Presentence Investigation Report (PSR)]. The CD told investigators that Petitioner Shea David Byrd ("Petitioner") was the source of supply for the methamphetamine and that the CD had just come from Petitioner's house. [Id.]. Law enforcement officers then went to Petitioner's house, where Petitioner agreed to cooperate and allowed the officers to search his house. [Id. at ¶ 7]. Officers found a firearm and 22 grams of methamphetamine. [Id.]. On March 17, 2017, officers stopped

---

[1] Citations to the record herein contain the relevant document number referenced preceded by either the letters "CV," denoting that the document is listed on the docket in the civil case file number 5:19-CV-00013-KDB, or the letters "CR," denoting that the document is listed on the docket in the criminal case file number 5:17-cr-00041-KDB-DCK-1.

Petitioner while he was driving and found 1,450 grams of methamphetamine and a firearm in his pickup truck. [Id. at ¶ 8].

On April 27, 2017, as a result of these activities, Petitioner was charged in a Criminal Complaint with one count of conspiracy to possess with intent to distribute cocaine and at least 500 grams of methamphetamine, all in violation of 21 U.S.C. §§ 846, 841(a), 841(b)(1)(A); one count of distribution and possession with intent to distribute cocaine and at least 500 grams of methamphetamine, all in violation of 21 U.S.C. §§ 841(a) and 841(b)(1)(A); and one count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c). [CR Doc. 1 at 1: Criminal Complaint]. Officers arrested Petitioner on May 5, 2017. [CR Doc. 23 at ¶ 9]. Petitioner had $1,600.00 cash in his pocket, methamphetamine in his truck, and two ounces of methamphetamine and dozens of firearms in his house. [Id. at ¶ 8]. On May 9, 2017, Petitioner waived his right to a preliminary hearing. [CR Doc. 7: Waiver of Preliminary Hearing].

On August 1, 2017, Petitioner was charged in a Bill of Information with one count of methamphetamine trafficking conspiracy involving 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, all in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 (Count One); and one count of possession of a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count Two). [CR Doc. 13: Bill of Information]. On August 1, 2017, Petitioner and the Government reached a plea agreement pursuant to which Petitioner agreed to plead guilty to Counts One and Two in the Bill of Information in exchange for "charging concessions made by the government." [CR Doc. 15 at 1]. The plea agreement also provided, in part, that the parties would jointly recommend, pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, that the Court make the following findings and conclusions as to the sentencing guidelines:

2

> a. **The amount of methamphetamine that was known to or reasonably foreseeable by the Defendant was at least one thousand five hundred (1,500) grams but less than five thousand (5,000) grams, resulting in a base offense level of 32.**
>
> …
>
> d. **The parties agree that either party may argue their respective positions regarding other specific offense characteristics, cross-references, special instructions, reductions, enhancements, and adjustments, as well as departures from the "applicable guidelines range." (U.S.S.G. § 5C1.1).**
>
> e. **The United States will not oppose a sentence at the bottom end of the applicable guidelines range as determined by the District Court.**

[CR Doc. 15 at 2-3 (emphasis in original)]. A Factual Basis in support of Petitioner's guilty plea was also filed the same day. [CR Doc. 14].

On August 10, 2017, Petitioner's Rule 11 hearing was held after he waived indictment. [CR Doc. 17: Waiver of Indictment; see CR Doc. 18: Acceptance and Entry of Guilty Plea]. At the plea hearing, Petitioner testified that he understood the charges, including the minimum and maximum penalties for those charges, and the plea agreement, that he was in fact guilty of the charges, and that no one had threatened, intimidated, or forced him to plead guilty. [CR Doc. 18 at ¶¶ 8, 9, 24-26, 32]. Petitioner also testified that he had read, understood, and agreed with the Factual Basis that was filed with his plea agreement. [Id. at 30-31]. Petitioner attested that he had had ample time to discuss any possible defenses with his attorney and that he was satisfied with his attorney's services. [Id. at ¶¶ 34-35]. Further, Petitioner declined the opportunity to say anything more regarding his attorney's services. [Id. at ¶ 36]. The Magistrate Judge accepted Petitioner's guilty plea, finding that it was knowingly and voluntarily made. [Id. at 4].

Petitioner was sentenced on February 7, 2019. Before his sentencing hearing, a probation officer prepared a PSR. [CR Doc. 23: PSR]. The probation officer recommended a base offense

3

level of 32 for Count One based on a drug amount of at least 1,500 grams but less than 5,000 grams of methamphetamine, U.S.S.G. § 2D1.1(a)(5), and a three-level decrease for acceptance of responsibility, resulting in a Total Offense Level (TOL) of 29. [Id. at ¶¶ 17, 23-24]. The probation officer also noted that Petitioner possessed a dangerous weapon, which would normally increase the offense level by two levels, but that this enhancement did not apply because Petitioner pleaded guilty to the § 924(c) offense. [Id. at ¶ 18]. The probation officer found a Criminal History Category of IV, which together with the TOL of 29, yielded a guidelines range of imprisonment of 121 to 151 months on Count One, followed by a mandatory minimum consecutive sentence of 60 months on Count Two. [Id. at ¶¶ 90-92]. The Court sentenced Petitioner to a term of imprisonment of 120 months on Count One and a term of imprisonment of 60 months on Count Two, to be served consecutively, for a total term of imprisonment of 180 months. [CR Doc. 37 at 2: Judgment]. The Court varied below the recommended guidelines range based on certain sentencing factors under 18 U.S.C. § 3553(a). [CR Doc. 38 at 3: Statement of Reasons]. Judgment on Petitioner's conviction was entered on February 12, 2018. [CR Doc. 37]. Petitioner did not appeal his conviction or sentence.

On February 4, 2019, Petitioner timely filed a motion to vacate under § 2255. [CV Doc. 1]. On initial review, the Court ordered Petitioner to resubmit his motion because he failed to file his original motion under penalty of perjury. [CV Doc. 2]. Petitioner timely resubmitted his motion signed under penalty of perjury.[2] [CV Doc. 3]. In his amended motion, Petitioner argues that his counsel was ineffective during the plea-bargaining process "because he allowed [an]

---

[2] Petitioner filed a document he called "Leave to File a Supplement to §2255" with his Amended Motion, which was docketed as an attachment thereto. [See Doc. 3-1]. The supplement includes copies of emails exchanged between Petitioner's counsel and the Government and a letter from Petitioner's counsel to Petitioner written the day after Petitioner filed his original motion to vacate, as well as additional argument by Petitioner relative to those correspondence. [Id.]. The Court will grant this motion to supplement the § 2255 motion to vacate and considers this supplement in determining Petitioner's motion.

earlier, more favorable offer with out [*sic*] a 924c charge [to] lapse before getting a commitment." [Doc. 3 at 4]. The Court then ordered the Government to respond to Petitioner's amended motion. [CV Doc. 4]. The Government timely responded, and Petitioner replied. [CV Docs. 5, 6].

This matter is now ripe for adjudication.

## II.   STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings provides that courts are to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. After examining the record in this matter, the Court finds that the arguments presented by Petitioner can be resolved without an evidentiary hearing based on the record and governing case law. See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.   DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense. See U.S. CONST. amend. VI. To show ineffective assistance of counsel, Petitioner must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him. See Strickland v. Washington, 466 U.S. 668, 687-88 (1984). In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689. "Judicial scrutiny of counsel's performance must be highly deferential," as it "is all too tempting

5

for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. Further, counsel has "wide latitude … in making tactical decisions." Id.

A petitioner must also establish prejudice in the form of "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. In considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

"'When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea.'" United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010) (quoting United States v. Bundy, 392 F.3d 641, 644 (4th Cir. 2004)). Thus, a knowing and voluntary guilty plea "forecloses federal collateral review" of prior constitutional deprivations, including allegations of ineffective assistance of counsel that do not affect the voluntariness of the plea. See Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1294-96 (4th Cir. 1992); accord United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of

6

action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Defendants are entitled to effective assistance of competent counsel during plea negotiations. McMann v. Richardson, 397 U.S. 759, 771, 90 S. Ct. 1441 (1970). Effective assistance of counsel at the plea-bargaining stage requires that defense counsel "communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." Missouri v. Frye, 566 U.S. 134, 145, 132 S. Ct. 1399, 1408 (2012). This duty certainly applies where a plea offer is formal and with a fixed expiration date. Id. "To show prejudice from ineffective assistance of counsel where a plea offer has lapsed or been rejected because of counsel's deficient performance," a petitioner must "show a reasonable probability that the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." Id. at 147, 132 S. Ct. at 1409.

In evaluating claims under § 2255, statements made by a defendant under oath at the plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks. Blackledge v. Allison, 431 U.S. 63, 73-74 (1977). "[C]ourts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy." United States v. Lemaster, 403 F.3d 216, 216, 221-22 (4th Cir. 2005). Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss … any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." Id. at 221-22.

Here, Petitioner claims that the emails between his attorney and the Government evidence the lapsed plea offer. Petitioner argues as follows on this point:

> The email chain begins on May 8, 2017, and ending [*sic*] on July 20, 2017 between Peter Adolf, Esq., and AUSA Steve Kaufman identify

7

> a plea offer for a total offense level of 29, and a guidelines range of (140-175) months, without mention of a 924 c charge. In fact, the prosecutor advises [Petitioner's] Counsel they would not be bringing three strong 924 c charges that would otherwise tack on 55 years above the drug sentence. Only later after a delay in [Petitioner] signing the plea agreement was the Prosecutor not willing to leave the sentencing factors open, unless he is going to plea to one of the 924 c charges, all supporting [Petitioner's] claims[.]

[Doc. 3-1 at 2]. Petitioner's interpretation of these emails, and presumably his memory of the events, are grossly inaccurate.[3]

In response to Petitioner's motion, the Government submitted copies of two plea agreements that were extended to Petitioner, neither of which are reflective of the "more favorable" agreement Petitioner contends his counsel allowed to lapse. [See Docs. 5-1, 5-2]. Namely, on June 13, 2017, the Government extended a plea offer that would have allowed Petitioner to plead guilty to the conspiracy charge, an amount of actual methamphetamine that was between 500 grams and 5,000 grams, with the parties reserving their right to advocate whether the base offense level should be 34 or 36; a two-level weapon enhancement; and a two-level enhancement for making threats. [See CV Doc. 5-1]. Apparently, after obtaining lab results, the Government revised the plea offer two days later to set the base offense level at 36, based on the amount of actual methamphetamine being more than 1,500 grams, but less than 5,000 grams. [See CV Doc. 5-2]. With a TOL of 37, which includes the two enhancements and a three-level reduction for

---

[3] The Court also notes that Petitioner's factual allegations regarding the alleged lapsed plea offer are incongruous. On one hand, he alleged that his attorney allowed the plea deal to lapse "before getting a commitment" from Petitioner. [CV Doc. 1 at 3]. Petitioner, however, also claims that he told his attorney that he would sign the plea agreement. [CV Doc. 1-1 at 1].

8

acceptance of responsibility, and a Criminal History Category of IV, the guidelines range would have been 292 to 365 months of imprisonment had Petitioner accepted the deal.[4]

On July 20, 2017, Petitioner emailed the prosecutor, proposing a guilty plea to 1.45 kilograms of a mixture of methamphetamine, for a base offense level of 30, a two-level increase for possessing firearms, and a three-level reduction for acceptance of responsibility, for a guidelines range of 140 to 175 months of imprisonment. [CV Doc. 3-2 at 8]. The prosecutor rejected the proposal because the drug amount was too low, it did not include the two-level enhancement for making threats, and the prosecutor was not bringing the § 924(c) counts that would have added a 55-year consecutive sentence. [Id. at 7].

On July 31, 2017, Petitioner's counsel proposed another plea agreement that would have included an agreement to 1,450 grams of a mixture containing methamphetamine, with the parties reserving their right to argue whether Petitioner was responsible for an additional 571.3 grams of actual methamphetamine, as well as their right to argue whether there was a credible threat. [Id. at 6]. The prosecutor rejected this proposal, stating that he was not willing to leave those sentencing factors open unless Petitioner would also plead guilty to one of the § 924(c) counts. [Id.]. Petitioner's counsel then proposed agreeing to a § 924(c) count, along with a drug conviction under § 841(b)(1)(A), with an aggregate mandatory minimum sentence of 15 years, if the Government would drop the credible threat enhancement and agree to only 1,450 grams of methamphetamine, as well as recommend a sentence at the low end of the guidelines range. [Id.]. The prosecutor agreed to remove the recommendation of a threat enhancement but stated that Petitioner's relevant conduct would have to be more than 1,500 grams of methamphetamine for a base offense level of 32. [Id. at 5].

---

[4] A TOL of 34 with a Criminal History Category of IV would have yielded a guidelines range of 210-262 months' imprisonment.

9

Ultimately, the parties reached the plea agreement described above in which Petitioner pleaded guilty to both counts charged in the Information and a joint drug amount recommendation of more than 1,500 grams but less than 5,000 grams of methamphetamine (for a base offense level of 32), but leaving open "other specific offense characteristics, cross-references, special instructions, reductions, enhancements, and adjustments, as well as departures or variances from the 'applicable guideline range.'" [CR Doc. 15 at 1-2]. Also, the Government agreed that Petitioner's plea was timely for purposes of acceptance of responsibility and that it would not oppose a sentence at the bottom of the applicable guidelines range. [Id. at 2].

Petitioner claims that his attorney failed to accept a more favorable plea offer before it lapsed. Petitioner, however, has disproven his own claim. Other than Petitioner's bare allegation that he was offered a plea agreement that would have yielded a TOL of 30 to Count One and a dismissal of Count Two [CV Doc. 4-5], the record, including the emails submitted by Plaintiff, demonstrate there was no such deal ever on the table. In fact, the emails unequivocally show that the Government was not agreeable to such a deal. The July 20 email from Petitioner's counsel was merely a proposal that was rejected by the Government. As such, Petitioner cannot show deficient performance or prejudice from the failure to accept a non-existent plea deal.

Furthermore, at Petitioner's plea hearing, after this deal had supposedly lapsed, he testified that he was satisfied with the services of his attorney and declined the chance to speak more about those services. Petitioner also agreed that there was a factual basis for his plea; that he had read, understood, and agreed with the Factual Basis; that he was not being "threatened, intimidated or forced" to plead guilty; and that he was, in fact, guilty of the offenses to which he was pleading guilty. Petitioner also testified that he had discussed with his attorney how the sentencing guidelines might apply to his case. Thereafter, the Court found that Petitioner's guilty plea was

made knowingly and voluntarily and that he understood the charges, potential penalties, and consequences of his plea. Ultimately, Petitioner's testimony regarding his satisfaction with his attorney's services "carr[ies] a strong presumption of verity." Lemaster, 403 F.3d at 221. And, in keeping with that testimony, there appeared no reason at the time of sentencing for Petitioner to be dissatisfied with those services. Petitioner's counsel was able to negotiate down from the June 15 plea offer, which would have carried a guidelines range of 292 to 365 months of imprisonment, to a plea deal that carried a sentence of 181 to 211 months of imprisonment. Then, the Court varied downward to a 180-month sentence based on § 3553(a) factors presented at sentencing. Petitioner's counsel's performance was not constitutionally deficient.

In sum, this claim should be denied for Petitioner's failure to show that his counsel's performance was deficient or that he was prejudiced by his counsel's performance.[5] See Strickland, 466 U.S. at 687-88.

## IV. CONCLUSION

For the foregoing reasons, the Court denies and dismisses Petitioner's Section 2255 petition and denies Petitioner's request for an evidentiary hearing.

**IT IS, THEREFORE, ORDERED** that:

1. Petitioner's Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 1] is **DENIED** and **DISMISSED**.

2. Petitioner's motion for leave to supplement his Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 [Doc. 3-1] is **GRANTED**.

---

[5] Petitioner's claim that he did not receive the benefit of the First Step Act because of his § 924(c) conviction due to his attorney's ineffective assistance is also without merit. The Act did not become law until December 21, 2018, months after Petitioner pleaded guilty and was sentenced. As such, the Act could not have informed his attorney's advice or Petitioner's decision to plead guilty.

3. **IT IS FURTHER ORDERED** that pursuant to Rule 11(a) of the Rules Governing Section 2254 and Section 2255 Cases, this Court declines to issue a certificate of appealability. See 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: September 3, 2020

Kenneth D. Bell
United States District Judge